UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELEAH CAMPBELL,

        *Plaintiff*,

v.

MURIEL BOWSER, *et al.*,

        *Defendants*.

Civil Action No. 22-03422 (AHA)

**Memorandum Opinion**

    Meleah Campbell, a former employee of KIPP DC public charter school, sues the school, school personnel, and the D.C. Mayor asserting she was unlawfully terminated for not complying with a school policy implementing D.C.'s COVID-19 vaccine mandate. The KIPP defendants and Mayor move to dismiss, arguing that Campbell's amended complaint fails to state a claim. The Court agrees and grants the motions to dismiss.

**I.    Background[1]**

    Campbell was a teacher at KIPP. ECF No. 39 ¶ 9. During the COVID-19 pandemic, the Mayor issued an order requiring school employees to get vaccinated against COVID-19 by a specific deadline. *Id.* ¶ 14. KIPP implemented the vaccine mandate and created a process for requesting exemptions, including by submitting a religious accommodation form. *Id.* ¶¶ 10, 12, 14. According to the amended complaint, Campbell requested an exemption without completing the school's exemption form, instead submitting a personal statement that questioned the efficacy

---

[1] As required at the pleading stage, the Court accepts the amended complaint's well-pled allegations as true and draws reasonable inferences in Campbell's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

and safety of the COVID-19 vaccine and indicated that her faith prevented her from taking the vaccine. *Id.* ¶¶ 11–13; ECF No. 1-1 at 1, 8–9. After receiving the incomplete submission, a KIPP employee contacted Campbell to obtain a completed form so that her religious exemption could be processed. ECF No. 39 ¶ 12. Campbell refused to submit a completed exemption form, responding she should not have to do so because the school had previously afforded her a religious accommodation related to medications and her personal statement should have sufficed. *Id.* ¶ 13. KIPP further cautioned Campbell that if she did not complete the exemption request form, she would be required to obtain a vaccination and the failure to do so would lead to termination; KIPP also provided further opportunities to comply. *Id.* ¶¶ 14–16. After Campbell did not respond, KIPP terminated her for failing to comply with the school's vaccine policy. *Id.* ¶ 17. In addition to these allegations concerning the back-and-forth preceding her termination, Campbell alleges the "Covid-19 vaccine is a monstrous fraud" created by the government. *Id.* ¶ 27.

Campbell filed this action against KIPP, KIPP employees who corresponded with her about the vaccine policy, and the D.C. Mayor, asserting claims under the First Amendment and Title VII, as well as fraud and battery under D.C. law. The KIPP defendants and Mayor have filed separate motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 41, 47.

**II.   Discussion**

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

2

*Id.* (quoting *Twombly*, 550 U.S. at 556). The Court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In cases involving an unrepresented, or "pro se" litigant, the Court is careful to give extra leeway. The Court evaluates the pro se complaint here "in light of all filings, including filings responsive to a motion to dismiss." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015)). Of course, a pro se plaintiff still "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (quoting *Atherton v. District of Columbia*, 567 F.3d 672, 681–82 (D.C. Cir. 2009)). "As such, while 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Montgomery v. Mayorkas*, No. 23-cv-03931, 2024 WL 4973406, at *3 (D.D.C. Dec. 4, 2024) (quoting *Twombly*, 550 U.S. at 555).

**A.  The District Is Substituted As Defendant For The Mayor**

As a preliminary matter, the Mayor observes that a suit against her in her official capacity "is deemed a suit against the municipality such that the District, rather than the District official, is the proper party defendant." ECF No. 41-1 at 8; *see Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 79 (D.D.C. 2016) (explaining that "an official-capacity suit against an individual is 'equivalent to a suit against the municipality itself'" (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996))). Because all of Campbell's allegations against the Mayor pertain to a municipal order that the Mayor signed in her official capacity, the Court substitutes the District for the Mayor as the proper defendant. *See Alma v. Bowser*, 159 F. Supp. 3d 1, 4 (D.D.C. 2016) (observing that when a plaintiff "mistakenly names Mayor Bowser in her official

3

capacity instead of the District, the established remedy for this pleading problem is substitution of the named party").

### B. Campbell Does Not State A First Amendment Claim

Campbell claims that the termination of her employment violated her free exercise rights under the First Amendment. ECF No. 39 ¶¶ 1, 25.

"[T]he First Amendment is implicated when a law or regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice." *Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002); *see also Branch Ministries v. Rossotti*, 211 F.3d 137, 142 (D.C. Cir. 2000) (explaining that a plaintiff asserting a Free Exercise Clause claim "must first establish that its free exercise right has been substantially burdened"). If a court concludes that government conduct burdens religious practice, it generally asks two further questions: "First, a court must ask if the burdensome policy is neutral and generally applicable. Second, if the first question can be answered in the negative, a court will proceed to ask whether the policy can survive strict scrutiny." *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2360–61 (2025).

Here, there can be no question Campbell has alleged her sincerely held religious belief in Christianity and that her faith precluded her from obtaining a vaccine. *See Levitan*, 281 F.3d at 1320 (noting that a plaintiff's "beliefs must be sincere and the practices at issue must be of a religious nature" to qualify for First Amendment protection). The parties dispute whether Campbell has satisfied the threshold inquiry by plausibly alleging that the defendants burdened her religious practice.

As a preliminary matter, it is not clear that the First Amendment applies to KIPP or the individual KIPP defendants. The First Amendment constrains the government, not private entities. *Cf. Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). KIPP argues that as a charter school, it is not a government entity and its personnel are not government employees, and

4

that even if KIPP could be considered a state actor, its termination of Campbell was a private personnel action, not state action. ECF No. 47-1 at 11–15; *see Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 116 (4th Cir. 2022) (en banc) (concluding that "there is no bright-line rule separating state action from private action," so "the inquiry is highly fact-specific in nature"); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 813 (9th Cir. 2010) (reasoning that even where an entity is performing a traditional government function, its decisions as an employer may not be state action). However, the Court need not decide whether KIPP is properly considered a state actor or undertook state action in its implementation of the vaccine mandate because it concludes Campbell has not plausibly alleged that the defendants burdened her religious exercise.

Campbell claims the defendants burdened her sincere religious beliefs in violation of the First Amendment by presenting her "with the choice of either violating . . . her religious beliefs or suffering a substantial penalty"—namely, losing her job. ECF No. 39 ¶ 25; *see also* ECF No. 53-1 at 17 (arguing the defendants violated the First Amendment because they "coerced" her "into either violating her faith or losing her job"). However, her amended complaint makes clear that KIPP promptly responded to her request for a religious exemption and, despite KIPP employees' repeated efforts to engage with Campbell to process her request, she never completed the form to apply for a religious exemption. According to the amended complaint, Campbell requested a religious exemption and submitted a personal statement in which she questioned the efficacy of the COVID-19 vaccine and stated that her Christian beliefs therefore prevented her from taking it. ECF No. 39 ¶¶ 10, 12, 14.[2] Within a few days of receiving Campbell's request and statement, a

---

[2]   Campbell's amended complaint refers to a "religious form" being attached. ECF No. 39 ¶ 11. There is no form attached to the amended complaint, but Campbell's original complaint attaches the personal statement she submitted, which states that it was intended "to give one a glimpse into why a Christian's stance would forbid a man or woman from receiving certain medical procedures

KIPP employee asked Campbell to submit a completed exemption request form so KIPP could process her religious exemption. *Id.* ¶ 12. The employee advised her to "please respond to all questions in the accommodation form," which would include a personal statement describing the religious beliefs upon which she was seeking an exemption, how long she held them, and how they had informed her life. *Id.* According to the amended complaint, Campbell refused to participate in this process, responding that she should not have to submit a completed exemption request because KIPP had previously given her a religious accommodation related to medications and that her personal statement should suffice. *Id.* ¶ 13.

Over the weeks that followed, KIPP employees made further efforts, cautioning Campbell that "[i]t appears you are declining to participate in our religious exemption process, which is your right," but the school could "only provide exceptions for employees who qualify for religious or medical exemptions." *Id.* ¶ 14. KIPP also informed Campbell that unless she properly applied for an exemption, she would be expected to get vaccinated by the deadline to keep her job. *Id.* After multiple further emails to Campbell without response, KIPP eventually placed Campbell on leave and then terminated her for failing to comply with the vaccine policy by engaging in the religious exemption process or obtaining a vaccine. *Id.* ¶ 17.

Even assuming the KIPP defendants could be considered state actors and implementation of the vaccine mandate was a state action, Campbell cannot show that KIPP's engagement with her in response to her exemption request and its advice to complete an exemption request form as part of the exemption process burdened her religious practice. The requirement to engage with the

---

like a vaccine." ECF No. 1-1 at 8. Campbell's statement goes on to express doubt as to the vaccine's effectiveness against the dominant COVID-19 variant and draw a correlation between the COVID-19 vaccine and cancer, and to explain that taking the vaccine would therefore violate her faith. *Id.* at 8–9. Campbell also stated that she viewed it as "patently illegal" to require her to complete the exemption request form. *Id.* at 8.

6

school's exemption process and submit a completed exemption form is at most an "inconsequential or *de minimis* burden on religious practice" that would not implicate the First Amendment. *See Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (further clarifying that a substantial burden exists when the government places "substantial pressure on an adherent to modify his behavior and to violate his beliefs" (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981))). Campbell's First Amendment claim is even further removed as to the District because, as Campbell acknowledges, the District simply adopted a general policy that explicitly allowed exemptions based on religion. ECF No. 53-1 at 13–14.

Campbell raises two arguments in response. First, Campbell argues that she should not have had to fill out the form because KIPP previously granted her a religious accommodation related to medicines. ECF No. 39 ¶ 14. However, while it may have been convenient for Campbell to not complete an additional form for the COVID-19 policy, the Court cannot conclude that requiring Campbell to complete a form related to the exemption she was seeking imposed a burden on religious practice.

Second, Campbell contends that requiring her to fill out the exemption form was itself a violation of the First Amendment because the form asked her to provide certain details about her religious beliefs preventing her from getting the vaccine, including how long she had held those beliefs and examples of how the beliefs had informed past life choices. *Id.* ¶ 12; ECF No. 53-1 at 4. However, a state employer does not violate the First Amendment by requiring an employee to provide information to affirm that the exemption is sought on the basis of a personal and genuine religious belief as opposed to a secular one. The Supreme Court has noted that "[s]tates are clearly entitled to assure themselves that there is an ample predicate for invoking the Free Exercise Clause" given the "difficulty of distinguishing between religious and secular convictions and in

7

determining whether a professed belief is sincerely held." *Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S. 829, 833 (1989); *see also Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 451 (7th Cir. 2013) (observing "it is not enough for the belief to be religious in nature, it must also be the employee's own religious belief").

To be sure, the Court's analysis would be very different—and it would raise serious First Amendment concerns—if Campbell had completed the form to apply for an exemption and then, as Campbell argues, state actors questioned "the validity or logic" of her religious beliefs. *See* ECF No. 53-1 at 24. It is beyond question that a person's religious belief or practice "need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas*, 450 U.S. at 714. But those are not the allegations before the Court, and nothing in Campbell's amended complaint supports an inference that KIPP's prompt engagement with her to process her religious exemption was pretext for religious discrimination. To the contrary, the amended complaint makes clear KIPP had previously granted Campbell religious accommodations she had applied for. ECF No. 39 ¶ 13.

### C. Campbell Does Not State A Title VII Claim

In her opposition brief, Campbell argues that KIPP violated Title VII by denying her a religious accommodation and treating her differently because of her religion. ECF No. 53-1 at 2, 7. KIPP argues that Campbell never asserted a Title VII claim in her amended complaint and raised it for the first time in her briefing, so the claim is therefore not properly before the Court. ECF No. 60 at 3. However, recognizing that Campbell is pro se, the Court construes the amended complaint's brief mention of Title VII, as well as Campbell's briefing, to assert a claim that KIPP violated Title VII's prohibition on religious discrimination. *See Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002); ECF No. 39 ¶ 21. "[S]o long as the basis for a claim is clear, a complaint need not 'plead law' in specific detail." *Aktieselskabet AF 21. Nov. 2001 v.*

8

*Fame Jeans Inc.*, 525 F.3d 8, 18 n.5 (D.C. Cir. 2008). However, the Court concludes this claim must be dismissed for reasons similar to Campbell's First Amendment claim.

Title VII prohibits treating an employee differently with respect to their "compensation, terms, conditions, or privileges of employment" because of their religion. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie disparate treatment claim, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). "[A]n employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citation omitted). A plaintiff must, however, plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). In addition, Title VII requires an employer to "accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)).

Campbell argues that KIPP's religious exemption process treated her differently on the basis of her religion because KIPP "chose to apply a stricter standard to religious exemptions while granting medical ones." ECF No. 53-1 at 14. However, neither Campbell's amended complaint nor other pleadings provide any specific allegations to support that assertion. In making her argument, Campbell cites to allegations in her amended complaint describing KIPP's response to her request for an exemption and advising Campbell to submit an exemption form so that her

request could be processed. *See* ECF No. 39 ¶¶ 14–17. None of those allegations support an inference that KIPP handled medical exemption requests more leniently than religious exemption requests, so Campbell has not "nudged" this claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

To the extent Campbell asserts a Title VII claim for failure to accommodate her religious beliefs, that claim fails for reasons similar to her First Amendment claim. As described, Campbell's allegations indicate that KIPP promptly responded to Campbell's request for an exemption and Campbell declined to participate in the process and apply for an exemption. *See Chloe v. George Washington Univ.*, No. 20-cv-03090, 2023 WL 6199076, at *8 (D.D.C. Sept. 22, 2023) (concluding employer lawfully terminated employee for violating COVID-19 vaccine mandate where employee "refused to engage in the interactive process so that [her employer] could determine whether an accommodation may have been available based upon a sincerely held religious belief"), *aff'd sub nom. Chloe v. Dent*, No. 24-7014, 2024 WL 2870891 (D.C. Cir. June 6, 2024).

### D. Campbell Does Not State A Fraud Claim

Campbell asserts a claim against all the defendants for common law fraud. "One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud." *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (citation omitted). Those elements are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Id.* (citation omitted). Fraud claims must satisfy a heightened pleading requirement: "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Campbell's allegations do not state a claim under this standard. The amended complaint states only conclusory allegations that COVID-19 is "a monstrous fraud" of "biblical proportion." ECF No. 39 ¶¶ 27–28. In her opposition brief, Campbell argues the emails from KIPP employees in her amended complaint show the school "misrepresented that religious exemptions were not legally required, falsely leading Plaintiff to believe that her only option was to take the COVID-19 vaccine or face termination." ECF No. 53-1 at 39. But nothing in the emails cited supports that inference. To the contrary, the emails described in the amended complaint specifically informed Campbell that exemptions were available for religious or medical reasons, advised Campbell to apply for a religious exemption, and then cautioned that she would be required to comply with the mandate if she opted not to participate in the exemption process. Campbell has not plausibly alleged any false representation of a material fact that she relied upon, let alone one that was knowing and made with the intent to deceive—all of which are required to state a fraud claim.

### E.  Campbell Does Not State A Battery Claim

Campbell also asserts a common law battery claim against all the defendants. "A battery is an intentional act that causes a harmful or offensive bodily contact." *Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1980). Here, Campbell does not allege the defendants engaged in any bodily contact with her. The amended complaint asserts that "forcing beneficial care on an unwilling patient would be battery." ECF No. 39 ¶ 29. But there are no facts alleged to support the inference that the defendants forced care on her—indeed, her allegations indicate that after declining to submit an exemption form, she did not obtain a vaccine and was terminated for not complying with the policy through one of those avenues.

## III.   Conclusion

For these reasons, the defendants' motions to dismiss, ECF Nos. 41 and 47, are granted. This action is dismissed without prejudice. A separate order accompanies this memorandum opinion.

_____
AMIR H. ALI
United States District Judge

Date:   September 30, 2025